IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOEL JAMES FLORES, | ) | CV. NO. 5:13-CV-418-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| S.E.R.T. OFFICER RAMIEREZ, | ) | |
| SGT BERRY, AND | ) | |
| L.V.N. MAXWELL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) DENYING OBJECTIONS TO MAGISTRATE JUDGE'S
MEMORANDUM AND RECOMMENDATION; (2) ADOPTING MAGISTRATE
JUDGE'S MEMORANDUM AND RECOMMENDATION

Before the Court is are Objections to Magistrate Judge Primomo's

Memorandum and Recommendation filed by Plaintiff Joel Flores ("Plaintiff").

("Obj.," Dkt. # 62.)  After careful consideration of the memoranda in support of and

in opposition to the Memorandum and Recommendation, the Court, for the reasons

that follow, **DENIES** Plaintiff's Objections to the Memorandum and **ADOPTS** the

Magistrate Judge's recommendations, thereby **GRANTING** Maxwell's Motion for

Summary Judgment and **GRANTING** Berry's Motion for Summary Judgment.

1

BACKGROUND

I.      Factual Background

Plaintiff Joel James Flores ("Plaintiff"), an inmate in the Bexar County Adult Detention Center ("BCADC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 asserting that he was subjected to excessive force, a cover up, retaliation, and denied adequate medical care by members of the BCADC staff.

On March 26, 2013, at approximately 10:30 p.m., Officer Ramirez responded to a call from Master Control Officer Oyervides, who indicated a fire alarm was triggered in Plaintiff's cell.  (Dkt. # 42, Ex. A ¶ 4.)  Ramirez reported that he was unable to see into the cell, because the window was covered with paper.  (Id. ¶ 5.)  According to Ramirez, after he opened the cell door, he witnessed Plaintiff and his cellmate standing in the cell and could smell smoke.  (Id.)

Plaintiff alleges that at this time Ramirez pushed him from behind into a metal table and kicked him in the chest while he lay on the ground.  (Dkt. # 2.) Ramirez asserts he verbally ordered both men to lie on the ground and each complied.  (Dkt. # 42, Ex. A ¶ 5.)  Ramirez states that no force was used and a SERT probe team responded shortly after Plaintiff was placed in handcuffs.  (Id.)

Sergeant Berry responded to the incident, witnessed the two inmates lying on the floor, smelled the smoke, and saw burnt paper in the toilet.  (Id. ¶ 7.) Berry requested the assistant shift commander, Lt. Beard, place both inmates in

EMIS status and filed a disciplinary report on both men for starting a fire in their cell. (Id. ¶¶ 8, 11.)  Berry asserts that Plaintiff admitted to starting the fire in his cell to make tattoo ink. (Id.)  Plaintiff denies admitting to burning the paper and explains that he was trying to put out the fire started by his cellmate. (Dkt. # 61 at 1.)  This disciplinary report was the first of two on which Plaintiff basis his claim against Berry. (Dkt. # 2 at 4.)

After the incident in his cell, Plaintiff was escorted to the prison clinic where he was seen by L.V.N. Maxwell. (Dkt. # 42 ¶ 16.)  Plaintiff alleges that Maxwell refused to properly document his injuries in an attempt to cover up Ramirez's misconduct. (Dkt. # 2.)  Maxwell contends that Plaintiff was ambulatory and alert with normal vital signs despite complaining of being handled roughly and sustaining a "blow to the chest and to his left leg." (Dkt. # 39, Ex. 1 at 38.) Maxwell documented Plaintiff's complaints and noted no injuries. (Id.)  Maxwell also testified that he was unable to fully evaluate Plaintiff due to Plaintiff's angry and uncooperative demeanor during the visit. (Dkt. # 40, Ex. 1 at 4.)

The next day, March 27, 2014, Plaintiff informed a guard that he was experiencing extreme chest pain and could not breathe. (Dkt. # 42 ¶ 19.)  The guard initiated a Code 1 and Berry responded.  According to Berry, he asked Plaintiff if he needed to go to the clinic and Plaintiff responded by yelling "yes" and running down the stairs into the dayroom where he began yelling and waiving to the other inmates.

(Id. ¶ 20)  Plaintiff denies he ran down the stairs or argued with other inmates during this event.  (Obj. at 2.)

Plaintiff was taken to the clinic, where he was seen by L.V.N. Flowers. (Dkt. # 39, Ex. 1 at 39.)  Flowers noted in Plaintiff's medical records that his vitals were normal and that he was suffering from a red and swollen elbow with pain rated at a 7/10.  (Id.)  Flowers also noted that Plaintiff had no trouble breathing and had normal oxygen saturation.  (Id.)  Berry, believing Plaintiff had faked his chest pains and breathing problems and based on his own observations, recommended Plaintiff receive disciplinary action for mocking a medical emergency.  (Dkt. # 42 ¶ 25.)

Flores was found guilty at a disciplinary hearing and assessed fifteen days loss of telephone, visits and commissary privileges.  (Dkt. # 55 at 12.)  Plaintiff appealed the action and lost, but his case was dismissed due to procedural error. (Id.)  This was the second disciplinary action Plaintiff alleges Berry used to cover up an attack on Plaintiff by Ramirez.  (Dkt. # 2 at 4.)

On March 29, 2014, Plaintiff was again admitted to the clinic complaining of chest pain.  This time he was seen by Howard Huber, a physician's assistant, who diagnosed him with musculoskeletal pain and prescribed pain medication.  (Dkt. # 39, Ex. 1 at 43.)  Plaintiff was seen two more times, on March 30, 2014, and April 2, 2014, complaining of knee pain, which was later revealed to have been caused by an infected spider bite.  (Id. at 44.)

On April 3, 2014, Plaintiff was admitted to the hospital to receive

treatment for his infected spider bite.  (Id.)  He was prescribed antibiotics and

discharged the same day.  (Id.)  Plaintiff was seen by clinic staff every day from

April 3, 2014 to April 16, 2014, to monitor his infection and to have his bandages

changed.  (Id. at 44– 60.)

II.     Procedural Background

Plaintiff filed this lawsuit on May 17, 2013.  (Dkt. # 2.)  On May 23,

2013, the case was forwarded to the Magistrate Judge for review and

recommendation.

On December 2, 2013, Maxwell filed amended motion for summary

judgment and to sever.  (Dkt. # 40.[1])  Berry also filed a motion for summary

judgment.  (Dkt. # 42.)  On January 2, 2014, the Magistrate Judge filed its

Memorandum and Recommendation recommending the Court grant the Motions for

Summary Judgment filed by Berry and Maxwell.  ("Mem.," Dkt. # 55.)  The

Magistrate Judge noted the excessive force claim against Ramirez remains for trial.

(Id.)

---

[1] Because Maxwell filed an amended motion for summary judgment, his original
motion (Dkt. # 37) is moot.

On January 17, 2014, Plaintiff timely filed Objections to the Magistrate

Judge's Memorandum and Recommendation.  ("Obj.," Dkt. # 61.[2])  He also filed a

Supplement to his Objections on January 30, 2014.  ("Supp. Obj.," Dkt. # 64.)

LEGAL STANDARD

I.      Review of a Magistrate Judge's Memorandum and Recommendation

Any party may contest the Magistrate Judge's findings by filing written

objections within fourteen days of being served with a copy of the Memorandum

and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The objections must specifically

identify those findings or recommendations that the party wishes to have the district

court consider.  Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court need not

consider "[f]rivolous, conclusory, or general objections."  Battle v. U.S. Parole

Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) (quoting Nettles v. Wainwright, 677

F.2d 404, 410 n.8 (5th Cir. 1982), overruled on other grounds by Douglass v. United

States Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996)).

The Court must conduct a de novo review of any of the Magistrate

Judge's conclusions to which a party has specifically objected.  See 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

---

[2] Plaintiff filed two Objections on the same day.  (See Dkt. ## 61–62.)  However, both documents appear to be identical.  As such, the Court will refer only to Dkt. # 61.

objection is made.").  On the other hand, findings to which no specific objections

are made do not require de novo review; the Court need only determine whether the

Memorandum and Recommendation is clearly erroneous or contrary to law.  United

States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

II.    Summary Judgment

Summary judgment is granted when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of

Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The moving party bears the initial burden of demonstrating the absence

of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  If the moving party meets this burden, the non-moving party must come

forward with specific facts that establish the existence of a genuine issue for trial.

ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th

Cir. 2012).  "Where the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting

First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In deciding whether a fact issue has been created, "the court must draw

all reasonable inferences in favor of the non-moving party, and it may not make

credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions,

improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th

Cir. 2003); Douglass v. United Servs. Automobile Assoc., 79 F.3d 1415, 1429 (5th

Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated

assertions are inadequate to satisfy the non-movant's burden.").

### DISCUSSION

Both Sgt. Berry and L.V.N. Maxwell have raised the defense of

qualified immunity to the claims asserted against them.  Qualified, also known as

"good faith" immunity is an affirmative defense that must be pleaded by a defendant

official. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (citing Gomez v. Toledo,

446 U.S. 635 (1980)).  Qualified immunity does not simply defend against liability,

but rather creates immunity from suit all together. Jackson v. City of Beaumont,

958 F.2d 616, 620 (5th Cir. 1992) ("One of the principal purposes of the qualified

immunity doctrine is to shield officers not only from liability, but also from

defending against a lawsuit.").

Federal courts review claims of qualified immunity under a two-step

analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by

Pearson v. Callahan, 555 U.S. 223, 236 (2009).  As stated in Pearson, courts are

permitted to exercise their sound discretion in deciding which of <u>Saucier</u>'s two prongs should be addressed first in light of the circumstances in the particular case at hand.  555 U.S. at 236 (holding that the <u>Saucier</u> procedure "need not be followed in any particular sequence").

The first step is to determine "whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right." <u>Id.</u> (quoting <u>Jones v. City of Jackson</u>, 203 F.3d 875, 879 (5th Cir. 2000)).  If the alleged conduct did not violate a constitutional right, the <u>Saucier</u> inquiry ceases because there is no constitutional violation to necessitate asserting qualified immunity.  <u>Saucier</u>, 533 U.S. at 201.

But if the alleged conduct did violate a constitutional right, then the court turns to the second prong of the <u>Saucier</u> analysis and must ask whether the constitutional right was clearly established at the time of the conduct—that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Price v. Roark</u>, 256 F.3d 364, 369 (5th Cir. 2001) (quoting <u>Saucier</u>, 533 U.S. at 201); <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken" (internal quotation marks and citations

omitted)).  Id.

The plaintiff bears the burden of showing that the defendant is not

entitled to immunity, namely that the plaintiff's clearly established constitutional

rights were violated.  Wyatt v. Fletcher, 718 F.3d 496, 502 (5th Cir. 2013).

I.      Sgt. Berry's Motion for Summary Judgment

Plaintiff appears to assert that Berry violated his constitutional rights by

attempting to prevent him from bringing this civil action by filing two disciplinary

actions and refusing to document the injuries allegedly caused to Plaintiff by

Ramirez.  (Dkt. # 2.)  The Magistrate Judge correctly noted that this type of claim is

cognizable as a conspiracy to deny access to courts.  (Mem. at 7; see Vanderburg v.

Harrison Cnty., Miss. ex rel. Bd. of Supervisors, 716 F. Supp. 2d 482, 490 (S.D.

Miss. 2010).)   To prevail on this claim, Plaintiff must prove that the conspiracy

"hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S. 343, 351

(1996).  There are two types of "access" claims: "backward-looking" or "forward-

looking."

A backward-looking claim is about "an opportunity already lost."  Id. at

414–15.  It looks "backward to a time when specific litigation ended poorly, or

could not have commenced, or could have produced a remedy subsequently

unobtainable."  Id. at 414.  For a "backward-looking access claim," Plaintiff must

prove (1) an underlying cause of action, (2) the litigation of which was frustrated by

10

official acts, (3) which resulted in a lost remedy.  Id. at 415–16.  As for the third

element, he:

> must identify a remedy that may be awarded as recompense but not
> otherwise available in some suit that may yet be brought. There is, after
> all, no point in spending time and money to establish the facts
> constituting denial of access when a plaintiff would end up just as well
> off after litigating a simpler case without the denial-of-access element.

Id. at 415.  For example, the official deception "may allegedly have caused the loss

or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or

the loss of an opportunity to seek some particular order of relief."  Id. at 414.

A forward-looking access claim, in contrast, is a case where the

"litigating opportunity yet to be gained" is being blocked by the defendants.

Christopher v. Harbury, 536 U.S. 403, 414 (2002).  "The object . . . is to place the

plaintiff in a position to pursue a separate claim for relief once the frustrating

condition has been removed."  Id. at 413.

Here, Plaintiff cannot maintain either type of claim.  Plaintiff has been

able to assert his excessive force claim against Defendant Rodriguez as evidenced

by the instant litigation, thereby negating any backward-looking claim.  And,

Plaintiff's assertions that Defendants have not provided him with all of the witness

statements, photographs of his injuries and camera footage are without merit,

thereby negating any forward-access looking claim.  Indeed, as the Magistrate Judge

pointed out, statements of Plaintiff's cellmate, Genaro Garza, and of Javier Gonzales

were provided to Plaintiff.  (See Mem. at 8.)  He also received a copy of the

videotape footage.  (Id.)  Because Plaintiff cannot show that he was denied access to

courts, he cannot satisfy the first step in a qualified-immunity inquiry, namely a

constitutional violation, sufficient to overcome Berry's qualified immunity.

Plaintiff objected to the Magistrate Judge's findings, arguing that

(1) Berry falsely alleged that Plaintiff had started the fire in his cell on March 26,

2013, (2) Berry falsely stated that Plaintiff had ran down the stairs after complaining

of chest pains on March 27, 2014, (3) Berry has repeatedly made every effort to

prevent Plaintiff from obtaining medical attention or proper documentation of his

injuries, (4) Berry filed disciplinary action against Plaintiff, because Plaintiff tried to

seek medical attention on March 27, 2013, and (5) Berry has "dogged Plaintiff every

step of the way in order to prevent his reporting and documenting his injuries."

(Obj. at 3–4.)

However, these objections do not address whether Plaintiff suffered a

constitutional violation—the first element needed to overcome a claim of qualified

immunity.  The facts disputed by Plaintiff in his objection still do not assert a

constitutional violation for denial of access to courts.  At best, Plaintiff states that

Berry has filed a disciplinary action against him, but this does not adequately

demonstrate a cognizable denial of access to courts.  In fact, Plaintiff was able to file

his complaint less than two months after Berry filed the disciplinary action and has

submitted twenty-four filings to the Court without issue. (See Dkt. ## 1, 2, 15, 18–

20, 23, 25, 26, 31, 32, 34, 38, 48, 49, 52, 58, 59, 61–66.) Absent more identifiable

facts to show a denial of access to courts, the Court must conclude that Plaintiff has

failed to state a constitutional violation, and thus Berry is entitled to qualified

immunity. Accordingly, the Court **ADOPTS** the Magistrate Judge's

recommendation to **GRANT** Berry's Motion for Summary Judgment.

II.      L.V.N. Maxwell's Motion  for Summary Judgment

           Plaintiff alleges two causes of actions against Maxwell. He alleges that

Maxwell refused to document his injuries in an effort to cover up Ramirez's alleged

assault and Maxwell failed to treat Plaintiff's injuries. (Dkt. # 2 at 4.)

           A.      Refusal to Document Injuries

           The Magistrate Judge concluded that Plaintiff's claims against Maxwell

for refusing to document his injuries failed for the same reason that his claim against

Berry (i.e., there was ample documentation). (Mem. at 13.) Plaintiff now objects to

the Magistrate Judge's finding, asserting that (1) Maxwell did not document

Plaintiff's injuries and advised Plaintiff and the medical staff that he should return

the following day and (2) a conspiracy existed between Maxwell and Berry. (Obj. at

3.) However, as outlined above, these objections do not establish a constitutional

violation of a denial of access to courts because Plaintiff was able to successfully

13

file his excessive force claim and received sufficient documentation.[3]  Therefore,

Maxwell is entitled to qualified immunity on Plaintiff's claim of refusing to

document his injuries.

      B.     Failure to Treat

      To prove an Eighth Amendment constitutional violation for inadequate

medical care, a plaintiff-prisoner must show two elements: (1) he or she suffered an

objectively serious harm that presented a substantial risk to his safety, and (2) the

defendants were deliberately indifferent to that risk.  Stewart v. Murphy, 174 F.3d

530, 534 (5th Cir. 1999) ("[A] prison official is not liable unless the official knows

of and disregards an excessive risk to inmate health or safety.").  The Magistrate

Judge concluded that the summary judgment evidence overwhelming established

that Maxwell did not deny any attention to Plaintiff's serious medical needs.  (Mem.

at 16.)  Plaintiff had no medical needs that were apparent to Maxwell or that were

revealed by his initial examination.  (Id.)  To the extent a more complete evaluation

might have revealed a more substantial injury, Plaintiff prevented Maxwell from

conducting a fuller examination by angry and uncooperative.  (Id. at 15–16.)

Plaintiff now objects to the Magistrate Judge's finding, asserting that he was not

---

[3] For example, Maxwell noted all of Plaintiff's complaints in his chart and took his vital signs.  (See Dkt. 40, Ex.1-A at 36–37.)

uncooperative and that any distress signs he displayed were because he feared

Maxwell was going to physically assault him.  (Supp. Obj. at 8.)

Even generously construing Plaintiff's objections to warrant a de novo

review, Plaintiff's claim of inadequate medical care fails on both elements to state

an Eighth Amendment failure-to-treat violation and thus fails to satisfy Saucier's

first prong.

First, Plaintiff did not suffer serious harm that posed a substantial risk

to his safety.  Plaintiff's medical records show that he was seen nearly every day for

three weeks by medical professionals.  (Dkt. # 39, Ex. 1 at 39–60.)  His vitals were

recorded as normal each time and he was prescribed antibiotics and pain killers.[4]

Additionally, his subsequent chest and elbow pain were documented by other

medical staff members on successive days as mere musculoskeletal pain and elbow

strain; certainly nothing presenting a substantial risk to his health.  (Id.)

Second, the deliberate indifference standard is an incredibly high bar,

which Plaintiff's version of the facts cannot meet.  Deliberate indifference is "a

stringent standard of fault, requiring proof that a municipal actor disregarded a

known or obvious consequence of his action."  Brown v. Callahan, 623 F.3d 249,

255 (5th Cir. 2010) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520

---

[4] The antibiotics were prescribed to treat a possible staph infection resulting from a
suspected spider bite on his right knee that was unrelated to the alleged use of
excessive force.  (Dkt. # 39, Ex. 1 at 44.)

U.S. 397, 410 (1997)).  To satisfy the deliberate-indifference prong, a plaintiff

usually must demonstrate a pattern of violations.  Estate of Davis v. City of N.

Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005) (explaining that actions and

decisions by officials that are merely "inept, erroneous, ineffective, or negligent" are

not deliberately indifferent and do not divest officials of qualified immunity).  Here,

not only did Maxwell perform an exam and adequately document his assessment,

but he also advised Plaintiff to return to the clinic as needed before Plaintiff was

removed from the medical treatment area due to Plaintiff's lack of cooperation.

(Dkt. # 40, Ex. 1-A at 36–39.)  Maxwell did not disregard an excessive risk to

Plaintiff's health.

        In sum, because Plaintiff failed to show a constitutional violation for

refusing to document injuries and for failing to treat, Maxwell is entitled to qualified

immunity.  Therefore, the Court **ADOPTS** the Magistrate Judge's recommendation

to **GRANT** Maxwell's Motion for Summary Judgement.

CONCLUSION

        For the foregoing reasons, the Court **DENIES** Plaintiff's Objections to

the Memorandum and **ADOPTS** the Magistrate Judge's Memorandum and

Recommendation, thereby **GRANTING** Maxwell's Motion for Summary Judgment

and **GRANTING** Berry's Motion for Summary Judgment.  (Dkt. ## 40, 42.)  The

Court notes, however, that any claims against Ramirez remain for trial.

16

All other pending motions are **DENIED AS MOOT**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, July 3, 2014.


_____

David Alan Ezra
Senior United States Distict Judge