IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOEL JAMES FLORES, | § | CV NO. 5:13-cv-418-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| ALVARO RAMIREZ, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER: (1) GRANTING IN PART PLAINTIFF'S MOTION FOR
DISCOVERY; (2) GRANTING IN PART DEFENDANT'S MOTION TO FILE
DOCUMENTS AND BRIEF UNDER SEAL AND AMENDED MOTION IN
LIMINE; (3) ORDERING DEFENDANT TO PRODUCE REDACTED PSI
INVESTIGATION MATERIALS TO PLAINTIFF; (4) ORDERING THE
<u>CLERK OF THE COURT TO ISSUE SUBPOENA</u>

Before the Court are a Motion for Discovery filed by Plaintiff Joel

James Flores ("Plaintiff") (Dkt. # 89) and a Motion to File Documents and Brief

Under Seal and Amended Motion in Limine filed by Defendant Alvaro Ramirez

("Defendant" or "Ramirez") (Dkt. # 90).  Pursuant to Local Rule 7(h), the Court

finds this matter suitable for disposition without a hearing.  For the reasons that

follow, the Court **GRANTS IN PART** Plaintiff's Motion for Discovery and

**GRANTS IN PART** Defendant's Motion to File Documents and Brief Under Seal

and Amended Motion in Limine.

1

BACKGROUND

This case is a pro se 42 U.S.C. § 1983 action arising out of an incident that occurred during Plaintiff's incarceration at the Bexar County Adult Detention Center ("BCADC"), where Plaintiff was held as a pretrial detainee.  Plaintiff alleges that on the night of March 26, 2013, Ramirez responded to a fire alarm, which was triggered in Plaintiff's cell.  (Dkt. # 42, Ex. A ¶ 4.)  According to Ramirez, when he opened the cell door, he saw Plaintiff and his cellmate standing in the cell and smelled smoke.  (Id. ¶ 5.)  Plaintiff alleges that, at this time, Ramirez pushed him from behind into a metal table and kicked him in the chest while he lay on the ground.  (Dkt. # 2.)  Ramirez contends that no force was used. (Dkt. # 42, Ex. A ¶ 5.)

Plaintiff alleges that, on the following day, he experienced extreme chest pain and could not breathe.  (Dkt. # 42 ¶ 19.)  In response, he was taken to the medical clinic, where medical staff found no breathing or oxygen saturation issues.  (Dkt. # 39, Ex. 1 at 39.)  Medical staff did note, however, that Plaintiff was suffering from a red and swollen elbow with pain rated at a seven out of ten.  (Id.) Two days later, Plaintiff returned to the clinic for chest pain, where he was diagnosed with musculoskeletal pain and was prescribed pain medication.  (Id. at 43.)

On May 27, 2013, Plaintiff filed a complaint alleging various claims under § 1983 against Ramirez and two other BCADC officers.  (Dkt. # 2.)  On July 3, 2014, the Court granted Motions of Summary Judgment filed by the other two officers and dismissed them from the case.  (Dkt. # 67.)  Accordingly, the only claim remaining in the case is Plaintiff's § 1983 excessive force claim against Ramirez .

The Court set a bench trial on the remaining claim for December 10, 2014.  (Dkt. # 79.)  At trial, Ramirez raised his three motions in limine, asking that the Court exclude any actions of Ramirez that occurred after March 26, 2013, the date of the incident in question, that do not involve Plaintiff; that the Court exclude any complaints about actions that do not involve Ramirez; and that the Court exclude any complaints about injuries that did not result directly and only from the use of force by Ramirez.  The Court orally granted the second and third motions on the basis that such actions would be irrelevant under Federal Rule of Evidence 401.

The first motion in limine was raised in response to Plaintiff's interest in presenting a June 4, 2013 news report that Ramirez was terminated following an excessive force incident at BCADC.  Ramirez's counsel indicated that she had not read the materials underlying the termination because she believed that it would create a conflict of interest.  Accordingly, the Court denied the first motion in

limine without prejudice, finding that the record was insufficient to grant the motion.

The Court further found that the trial could not continue without resolving the issue and continued the trial to May 13, 2015.  (Dkt. # 87.)  The Court gave Plaintiff ten days from the date of the hearing to file a request for documents relevant to or concerning findings or allegations of use of excessive force against detainees or prisoners by Ramirez.  The Court directed that Ramirez file any memoranda in opposition or request for in camera review within 20 days of that filing.  The Court also directed Ramirez's counsel to determine if there was a conflict of interest and, if so, file a motion to withdraw from the case.

On December 19, 2014, Plaintiff filed the instant Motion for Discovery.  (Dkt. # 89.)  On December 30, 2014, Ramirez responded with the instant Motion to File Documents and Brief Under Seal for in Camera Inspection by the Court and Amended Motion in Limine.  (Dkt. # 90.)

<u>DISCUSSION</u>

I.    <u>Plaintiff's Motion for Discovery</u>

Plaintiff makes seven requests in his motion for discovery: (1) Any and all documents from the P.S.I.—Internal Affairs, Professional Standards, and Integrity Division (BCADC) and District Attorney for any and all allegations of excessive force and/or assault by Ramirez, including evaluation reports,

supervisory reports, general assessment reports and/or evaluations; (2) Any and all

P.S.I. alerts regarding complaints by those held in detention of assaults and injury

by Ramirez prior to and after the March 26, 2013 incident; (3) Any and all

documents related to excess use of force or allegations of excessive force filed by

anyone in custody against Ramirez from three to five years prior to March 26,

2013; (4) All complaints of abuse/grievances filed by Plaintiff after incident on

March 26, 2013 to show the "systematic retaliation acts perpetrated by SERT

(gang) team at BCADC," including allegations against Defendant and any and all

pictures taken by Sergeant Vann with PSI, showing bruises and wounds received at

the hands of the SERT team after Plaintiff filed a § 1983 claim while in BCADC

custody; (5) Any and all reports filed with the grievance department; and (6) All

documents (grievances) filed by inmates Rudy Cantu and Jessie Yanez "since

pertinent witness documents relating to this case are within these inmates[']

submitted grievance record."  (Dkt. # 89.)  Additionally, Plaintiff requests that the

Court subpoena witness Genaro Garza ("Garza") "since this witness is pertinent to

the case and plaintiff's allegations against Defendant."  (Id.)

       Of Plaintiff's six discovery requests, only requests one through three

are responsive to the limited discovery that the Court reopened during the

December 10, 2014 bench trial.  The Court therefore **GRANTS** requests one, two,

and three, as listed above, and **DENIES** requests four through six.  The Court notes

that requests four through six are duplicative of discovery requests that Plaintiff

has previously made and that have either been responded to or have been denied.

(See Dkts. ## 33, 84.)

Plaintiff's subpoena request follows Magistrate Judge John

Primomo's September 26, 2014 order, which directed Plaintiff to submit the name

and address of each witness he wishes to use at trial with a brief statement as to the

individual's anticipated testimony so that the Court could determine whether to

issue a subpoena.  (Dkt. # 84.)  Plaintiff has provided Garza's name and inmate

identification number and contends that Garza is currently incarcerated by the

Texas Department of Criminal Justice ("TDCJ").  (Dkt. # 89 at 4.)  In prior filings,

the parties have explained that Garza was Plaintiff's cellmate at the time of the

incident and that he submitted a statement regarding the incident to the facility.

(See Dkt. # 67 at 11.)  Because Garza's testimony, as a witness to the incident, is

relevant to the excessive force claim against Ramirez, the Court will order the

subpoena issued, so long as Garza is still in custody at the time of the trial.  See

Gibbs v. King, 779 F.2d 1040, 1047 (5th Cir. 1986) (noting that the court has the

discretion to issue a subpoena on behalf of an indigent civil litigant) (citing Estep

v. United States, 251 F.2d 579, 582 (5th Cir. 1986)).[1]

---

[1] The Court reminds Plaintiff that he may secure the voluntary presence of any free
world witness and call said witnesses at trial, provided that he has disclosed to the
Court and Defendant at least 10 days prior to trial that he plans to call the witness.

II.     <u>Ramirez's Motion to File Under Seal and Amended Motion in Limine</u>

In his Motion, Ramirez presents for the Court's in camera review the PSI investigation documents from the March 30, 2013 excessive force incident that led to Ramirez's termination.  Ramirez contends that, because the PSI documents are irrelevant evidence and unduly prejudicial, the Court should grant his motion in limine and preclude production of the PSI documents to Plaintiff.  ("Def. Mot.," Dkt. # 90, Ex. 4 ¶¶ 1, 4, 5.)  Alternatively, Ramirez requests that, if the Court finds the documents producible, that it permit Ramirez to redact all personal information of involved officers and staff photographs.  (<u>Id.</u> ¶ 5.)

A.      <u>Summary of PSI Investigation</u>

According to the PSI file, at approximately 6:40 p.m. on March 30, 2013, inmate Shawn McHazlett ("McHazlett") was waiting to request a razor blade pursuant to his shaving privileges from the pod officer David Gonzalez ("Gonzalez"), who was speaking with Ramirez.  (Dkt. # 90, Ex. A at 3, 124.)  According to Gonzalez, McHazlett, and an inmate-witness, Ramirez then verbally confronted McHazlett in the day room.  (<u>Id.</u> at 168.)

According to McHazlett, at 9:00 p.m. on the same day, Ramirez entered McHazlett's cell while McHazlett was sleeping, pulled him off the bunk, and began punching him.  (<u>Id.</u> at 125, 168.)  Another officer, Michael Smith, also entered the cell and began to hit McHazlett with his riot helmet.  (<u>Id.</u> at 168.)

7

Shortly thereafter, Smith shot his taser at McHazlett, ultimately hitting

McHazlett's clothing, but not puncturing his skin.  (<u>Id.</u> at 158, 168, 196.)

PSI's investigation included an interview of McHazlett's cellmate,

who corroborated McHazlett's account, and Gonzalez, who stated that Ramirez

instructed him to open McHazlett's cell door and that he heard talking and then

struggling.  (<u>Id.</u> at 168.)  PSI also reviewed photos and medical records of

McHazlett after the incident, which reflected redness on McHazlett's back,

shoulder, and chest; a swollen lip; and complaints of pain on his abdomen.  (<u>Id.</u> at

168, 196.)  Additionally, PSI conducted polygraph examinations on McHazlett,

Smith, and Ramirez.  (<u>Id.</u> at 169.)  Ultimately, PSI concluded that McHazlett's

allegations against Ramirez were grounded on June 11, 2013.  (<u>Id.</u> at 166–67.)

Because of the findings, the Bexar County Sheriff's Office found cause to

terminate Ramirez on June 24, 2013.  (<u>Id.</u> at 73.)  Ramirez was unsuccessful in

challenging his dismissal and was dishonorably terminated on October 2, 2013.

(<u>Id.</u> at 65, 68, 74, 155.)  Ramirez maintains that the allegations against him are

false.  (<u>Id.</u> at 63.)

The PSI file also contains the investigation materials of Michael

Smith's role in the incident.  Smith was also terminated as a result of the incident.

(<u>Id.</u> at 46.)

B.     Admissibility of the PSI Investigation Materials

Ramirez contends that the PSI investigation materials are irrelevant and do not fall within the exceptions for character evidence or habit evidence. (Def. Mot. at 5–7.)  Ramirez further contends that the incident with Plaintiff and the incident with McHazlett are distinguishable on several grounds.  (Id. at 4–5.) Accordingly, Ramirez contends that the materials should be excluded.  (Id.)

1.     Applicable Standard

In general, evidence of past bad acts is not admissible to prove a person's character or to show that the person had the propensity to act in a particular way.  Fed. R. Evid. 404(b)(1); Carson v. Polley, 689 F.2d 562, 572–73 (5th Cir. 1982).  However, extrinsic character evidence can be admissible for other purposes, including proof of intent.  Fed. R. Evid. 404(b)(2).  A two-part test governs the admission of such evidence: the court must first determine that the evidence is relevant to intent rather than character, and then determine that the probative value of the evidence is not substantially outweighed by the danger of undue prejudice.  Carson, 689 F.2d at 573.  Bad acts are relevant when they share a common characteristic that is "significant to the inquiry at hand":

> Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the charged characteristic. . . . Where the issue addressed in the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses.

> The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978).  Accordingly, "[o]nce it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that he defendant committed the extrinsic intent, the evidence satisfies the first step under rule 404(b)."  Id. at 913.

To determine whether the probative value outweighs the prejudicial effect—the test's second prong—courts consider three factors: (1) "the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference"; (2) "the overall similarity of the extrinsic and charged offenses"; and (3) "how much time separates the extrinsic and charged offenses."  Id. at 914–15.

### 2.    Relevancy of the Investigation

Although Plaintiff does not specifically identify the purpose for which he seeks to admit the McHazlett incident, the Court must liberally construe his arguments because he proceeds pro se.  E.g., Wright v. El Paso Cnty. Jail, 642 F.2d 134, 135 (5th Cir. 1981).  Accordingly, the Court construes his request as a request to proffer the McHazlett incident as probative of Ramirez's intent in wielding excessive force against Plaintiff.

To prove excessive force in violation of the Fourteenth Amendment, a prisoner must show that the force was used maliciously and sadistically to cause

harm, rather than in a good-faith effort to maintain and restore discipline.  Kitchen v. Dall. Cnty., Tex., 759 F.3d 468, 477 (5th Cir. 2014) (reminding that a pretrial detainee's Fourteenth Amendment excessive force claim is subject to the same analysis as a convicted prisoner's claim for excessive force under the Eighth Amendment) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992) and Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993)).  Five nonexhaustive factors are relevant in assessing whether the force was used maliciously and sadistically: (1) the extent of the injury suffered; (2) the need for force; (3) relationship between that need and the amount of force used; (4) the threat reasonably perceived by the official; and (5) any efforts made to temper the severity of the forceful response. Id. (citing Hudson, 503 U.S. at 7 and Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999)).

Unlike in a Fourth Amendment excessive force analysis, which analyzes whether the force used was objectively reasonable, "subjective motivations of the individual officers are of central importance in deciding whether force used against a [pretrial detainee] violates the [Fourteenth] Amendment." Graham v. Connor, 490 U.S. 386, 397–98 (1989) (comparing the state of mind

requirements for excessive force claims made by arrestees and prisoners).[2]

Accordingly, intent evidence is relevant to Plaintiff's claim.

        The PSI investigation materials demonstrate that Ramirez was

ultimately terminated for using excessive force against McHazlett without

provocation after he asked Gonzalez to open McHazlett's cell.  (Dkt. # 90, Ex. A at

166.)  Specifically, the termination report found, in relevant part, that (1) Ramirez

knowingly or willfully assaulted McHazlett; (2) Ramirez violated the use of force

policy, which permits the use of reasonable force only if all other reasonable

means have failed to produce compliance; and that (3) Ramirez physically abused

McHazlett.  (Id. at 166–67.)  The intent requirements of these findings are

sufficiently similar to the intent requirements of an excessive force claim under the

Fourteenth Amendment so as to render the materials related to the incident relevant

to the instant case.  See United States v. Brugman, 364 F.3d 613 (5th Cir. 2004)

(upholding the relevancy of testimony about a prior excessive force incident to a

criminal charge of depriving another of the constitutional right to be free of

unreasonable force while acting under the color of law, since the government

---

[2] For this reason, the paragraph that Ramirez has lifted verbatim, without
appropriate citation, from Davis v. Grynkewicz, No. 1:12-CV-587, 2013 WL
2249294, at *2 (M.D. Pa. May 22, 2013), is wholly misplaced.  Unlike in
Grynkewicz, where the "determinative inquiry" was a question of objective
reasonableness because the plaintiff alleged claims under the Fourth Amendment
for injuries he sustained during his arrest, id., Plaintiff's excessive force claims
arise under the Fourteenth Amendment because he was a pretrial detainee at the
time of the incident.

adequately demonstrated that the defendant committed the act about which the witness testified and the act was relevant to the defendant's intent in using excessive force against the victim of the charged offense); Carson, 689 F.2d at 571–72 (upholding relevancy of a performance evaluation to an excessive force claim because "[l]oss of temper and consequent intentional hostility towards other detainees on earlier occasions made it more likely that a similar intent was present in [the defendant's] conduct towards [the plaintiff]").  Accordingly, the evidence satisfies the first prong of the test for admissibility.

> 3.    Probative Value of the Evidence

The bulk of Ramirez's arguments against admission of the PSI investigation materials focus on the issues relevant to the probative value of the evidence in relation to the prejudicial nature of the offense, specifically as related to the similarity of the acts and their temporal proximity.  The Court addresses both arguments within the framework set forth by the Fifth Circuit.

> a.    Similarity of the Acts

Ramirez contends that the incident with Plaintiff and incident with McHazlett are dissimilar in three material ways: (1) in the McHazlett incident, there was an allegation of a prior incident between Ramirez and the inmate, but in the incident with Plaintiff,  it is undisputed that Ramirez entered the cell because of smoke; (2) in the McHazlett incident, another officer's testimony corroborated the

inmate's account, but in the incident with Plaintiff, another officer's testimony corroborates Ramirez's account; and (3) Plaintiff was not involved in the McHazlett incident, nor was McHazlett involved in the incident with Plaintiff. (Def. Mot. at 4–5.)

Defendant's arguments are unconvincing.  Both incidents involved Ramirez, in his role as an officer with BCADC, using or allegedly using excessive force against a detainee in the BCADC after entering the detainee's cell.  Both McHazlett and Plaintiff maintain that they did not physically instigate the altercation, but were nevertheless subjected to force.  It is irrelevant that Plaintiff was not involved in the McHazlett incident, or vice versa.  E.g., Brugman, 364 F.3d at 621 (admitting evidence from a witness who, in an incident separate from that in which the offense victim was involved, was subjected to excessive force by the same officer).  Accordingly, the acts are not materially dissimilar, and this factor weighs in favor of admission of the PSI investigation materials.

### b.   Temporal Proximity

Ramirez suggests that the fact that the McHazlett incident occurred after the incident with Plaintiff weighs against admission.  (Def. Mot. at 6 n.1.) However, Fifth Circuit precedent is clear that "[t]he principles governing extrinsic offense evidence are the same whether that offense occurs before or after the offense charged."  Beechum, 582 F.2d at 902 n.1.  Relying on this proposition, the

14

Brugman court concluded, in an excessive force 404(b) inquiry, that a subsequent incident proffered as extrinsic evidence of intent was temporally proximate to the charged offense when it occurred less than six weeks after the charged offense. 364 F.3d at 621; see also Montgomery v. Boutee, No. 07-0094-JJB-DLD, 2010 WL 2545652,at *2 (M.D. La. June 21, 2010) (finding two incidents in a termination letter sufficiently temporally proximate to the plaintiff's allegations of excessive force when they occurred three and eight months after the incident with the plaintiff, respectively).

Here, the alleged incident with Plaintiff occurred on March 26, 2013, only four days before the incident with McHazlett. Accordingly, the incidents are temporally proximate, and this factor weighs in favor of admission of the PSI investigation materials.

      c.    <u>Other Evidence, Stipulation, or Inference of Ramirez's Unlawful Intent</u>

Apart from statements from Garza and Plaintiff, the Court is unaware what evidence Plaintiff intends to introduce to prove that Ramirez had unlawful intent. Accordingly, this factor is neutral as to admission of the PSI investigation materials.

      d.    <u>Conclusion as to Prejudice</u>

Given the weight of the factors, the Court finds that the probative value of the evidence is substantially outweighed by its prejudicial effect.

15

Accordingly, the PSI investigation materials should be admitted, especially since the trial is a bench trial and not a jury trial.  See, e.g., Brugman, 364 F.3d at 621 (admitting witness statements regarding a previous excessive use of force incident); Carson, 689 F.2d at 573 (admitting performance evaluation citing defendant's tendency to get into arguments with inmates and his temper); Montgomery v. Boutee, No. 07-0094-JJB-DLD, 2010 WL 2545652, at *2 (M.D. La. June 21, 2010) (admitting a letter showing that "an investigation ha[d] uncovered 'a pattern of misconduct' on the defendant's part, including that he 'routinely used excessive force with inmates'"); see also Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 520 (5th Cir. 1981) (holding that "excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure" in the context of a bench trial, when the judge can exclude improper inferences from his mind before reaching a decision).

CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Discovery (Dkt. # 89).  In conjunction with this ruling, the Court **ORDERS** the Clerk of the Court to issue a subpoena to secure TDCJ inmate Genaro Garza's presence at the May 13, 2015 bench trial.

Additionally, the Court **DENIES** Ramirez's Amended Motion in Limine (Dkt. # 90).  Accordingly, the Court **ORDERS** that Ramirez produce the

PSI investigation materials, redacted to exclude personal information of involved officers and staff photographs, to Plaintiff. However, the Court **GRANTS** Ramirez's Motion to File the Documents Under Seal (Dkt. # 90), so as to protect the aforementioned personal information and photographs from becoming part of the public record.

      **IT IS SO ORDERED.**

      **DATED:** San Antonio, Texas, April 15, 2015.

                                          _____

                                          David Alan Ezra
                                          Senior United States Distict Judge